UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
HAI MING LU, WAI HUNG LAM, ZHOU HUA    :
LI, JIAN TING DENG, KOWN TUEN CHEUNG,  :
SHAO QING CHEN, YUEN CHEUNG LEE, DI    :     06 Civ. 2657 (JSR)
JUN CHEN,                              :
                                       :             OPINION
               Plaintiffs,             :
                                       :
          -v-                          :
                                       :
                                       :
JING FONG RESTAURANT, INC., SHUI LING  :
LAM, YAU MING LAM, CHUN TSUI, CHUNG    :
KO CHENG, POK MAN LEUNG, CHEN KOWK     :
CHENG,                                 :
                                       :
               Defendants.             :
------------------------------------ x

JED S. RAKOFF, U.S.D.J.

          Plaintiffs, members of the wait staff at defendant Jing Fong

Restaurant, Inc.,[1] filed this action against Jing Fong Restaurant,

Inc. and six individuals associated with the restaurant

(collectively, "Jing Fong"[2]) alleging: (i) violations of minimum wage

provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §

206(a), and the New York Labor Law ("NYLL") § 652; (ii) violations of

the overtime provisions of the FLSA and the NYLL; (iii) retention of

gratuities in violation of § 196-d of the NYLL; (iv) violations of

---

[1] The "wait staff" at Jing Fong includes captains, assistant
captains, head waiters, waiters, busboys, and dim sum servers.
See Defendant's Statement pursuant to Local Rule 56.1 ("Def.
56.1") ¶ 2; Plaintiff's Responsive Statement pursuant to Local
Rule 56.1 ("Pltf. 56.1") ¶ 2. The first three of these (captains,
assistant captains, and head waiters) are known as "Black
Jackets."  Id. ¶ 3.  Plaintiffs in this case are all either Black
Jackets or waiters, except for plaintiff Yuen Cheung Lee, who is
variously denominated a "busboy" or a "dish transporter." Compare
Pltf. 56.1 ¶ 4 with Def. 56.1 ¶ 4.

[2] Neither side's papers differentiate between Jing Fong
Restaurant, Inc. and the individual defendants for purposes of
this motion.

the uniform reimbursement requirements of the NYLL; (v) retaliation in violation of the NYLL; and (vi) breach of contract.  Following motion practice, oral argument, and supplemental briefing, the Court, by Order dated July 27, 2007 granted in part and denied in part Jing Fong's motion for summary judgment.  This Opinion gives the reasons for those rulings.[3]

Summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether there is a genuine issue of material fact, a court resolves all ambiguities, and draws all inferences, in favor of the non-moving party.  See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). With that in mind, the pertinent facts of record, either undisputed or, where disputed, taken in plaintiffs' favor, are as follows:

Defendant Jing Fong Restaurant, Inc. is the owner of a Chinese banquet hall and restaurant located at 20 Elizabeth Street in Manhattan, New York (the "Restaurant").  At full capacity, the Restaurant can accommodate as many as 800 customers.  See First Declaration of Mandy Chan sworn to October 30, 2006 ("M. Chan First Decl.") ¶ 2.  Although the Restaurant offers dim sum in the mornings and afternoons and also serves a la carte lunches and dinners, the

_____

[3] Plaintiffs' memorandum of law in opposition to defendants' motion for summary judgment offered no response to defendants' arguments to dismiss the contract claim.  Accordingly, the dismissal of that claim was effectively unopposed and requires no further discussion here.

majority of its revenue is derived from pre-arranged banquets, which are frequently large and extravagant affairs. See Def. 56.1 ¶¶ 6-8; Pltf. 56.1 ¶¶ 6-8.

All of the plaintiffs here, members of the Jing Fong wait staff, were likewise employed by the Restaurant in 1997 when complaints regarding Jing Fong's labor practices, including its compliance with federal and state laws regulating overtime, minimum wages, and the retention of gratuities, were the subject of a special proceeding initiated by the New York State Attorney General in New York Supreme Court, see Def. 56.1 ¶¶ 28-31, 61; Pltf. 56.1 ¶¶ 38-31,51. Such complaints were also the subject of a prior lawsuit before this Court. See Chan et al. v. Jing Fong Restaurant, Inc. et al., 97 Civ. 0388 (S.D.N.Y.)(JSR).

On October 29, 1997, the parties executed a Stipulation of Settlement that resolved both the state and federal actions. The settlement, among other things, required Jing Fong to pay compensation to various employees, to refrain from retaining "gratuities" given to the wait staff, to submit to a period of monitoring by the New York State Attorney General for 32 months, and to post in prominent view of the wait staff the settlement's terms in both English and Chinese. See Def. 56.1 ¶¶ 59-60; Pltf. 56.1 ¶¶ 59-60.

The instant lawsuit claims that, notwithstanding the settlement, Jing Fong continues to violate the law in various ways:

First, plaintiffs challenge Jing Fong's practice of retaining a portion of the "service charge" it assesses its banquet customers,

rather than treating the charge as a "gratuity" payable in its entirety to the wait staff.  Specifically, it is undisputed that in connection with its banquet business, Jing Fong imposes a 15% "service charge," payable at the time of payment for the banquet, of which a certain percentage (currently 65%) goes to the wait staff, while the remainder (currently 35%) is retained by the Restaurant and accounted for in its gross receipts.[4]  See Def. 56.1 ¶¶ 85-87; Pltf. 56.1 ¶¶ 85-87.

Plaintiffs contend that Jing Fong's retaining any portion of the service charge violates New York Labor Law § 196-d, which provides in full:

> No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee. This provision shall not apply to the checking of hats, coats or other apparel. Nothing in this subdivision shall be construed as affecting the allowances from the minimum wage for gratuities in the amount determined in accordance with the provisions of article nineteen of this chapter nor as affecting practices in connection with banquets and other special functions where a fixed percentage of the patron's bill is added for gratuities which are distributed to employees, nor to the sharing of tips by a waiter with a busboy or similar employee.

N.Y. Lab. Law § 196-d (emphasis supplied). Plaintiffs argue that the service charge qualifies as a "charge purported to be a gratuity" and therefore must be given entirely to the wait staff.  Jing Fong responds that the banquet fee is not a gratuity since it is

---

[4] That, as plaintiff's claim, "at least one" customer may have paid less than 15% on one occasion is totally irrelevant given the undisputed evidence that in every other instance the mandated fee was 15%.  See Pltf. 56.1 ¶ 87.

4

mandatory, is communicated to a customer in advance of the banquet, and covers a variety of services not all of which involve the wait staff (hence the percentage distribution).

In this Court's view, this is not an open question under New York law.  Rather, New York courts have repeatedly held that, with respect to mandatory service charges in the restaurant industry, "[s]uch a charge is not in the nature of a voluntary gratuity presented by the customer in recognition of the waiter's service, and therefore need not be distributed to the waiters pursuant to Labor Law § 196-d, notwithstanding that the customer might believe that the charge is meant to be so distributed." See Bynog v. Cipriani Group, Inc., 748 N.Y.S.2d 9, 11, 298 A.D.2d 164, 165 (N.Y. App. Div. 1st Dep't 2002), aff'd on other grounds, 802 N.E.2d 1090, 770 N.Y.S.2d 692 (2003); see also Weinberg v. D-M Rest. Corp., 442 N.Y.S.2d 965, 426 N.E.2d 459,(1981) (observing "'A tip is in law, if not always in fact, a voluntary payment'") (quoting Beaman v. Westward Ho Hotel Co., 89 Ariz. 1, 4-5 (1960)).

Purporting to rely on a recent case in this District, Chan v. Triple 8 Palace, Inc., No. 03 Civ. 6048 (GEL), 2006 U.S. Dist. LEXIS 15780, 2006 WL 851749 (S.D.N.Y. Mar. 30, 2006), and a 1999 opinion letter issued by the New York Department of Labor, see N.Y. Dep't of Labor Opinion Letter (Mar. 26, 1999), attached as Exhibit 2 to the First Declaration of Caryn Lederer, plaintiffs nonetheless argue that the mandatory nature of the fee is not dispositive of the issue and that the relevant inquiry also requires examination of both the impression given to customers and the tax treatment of the fees.

But only a few months ago, this very argument was decisively rejected by the First Department in <u>Samiento v. World Yacht Inc.</u>, 833 N.Y.S.2d 2 (N.Y. App. Div. 1st Dep't 2007).  In <u>Samineto</u>, restaurant servers claimed their employers had unlawfully retained the entirety of "the service charges/automatic gratuities added to meal and banquet bills in place of the patrons' direct payments to the waitstaff of traditional tips." <u>Id.</u> at 3. On appeal, the First Department not only affirmed the dismissal of some § 196-d claims by the lower court, but also dismissed the remaining § 196-d claims, stating:

> All of these patrons paid a mandatory service charge that was not in the nature of a voluntary gratuity, and thus the failure to remit any of this  charge to the waitstaff did not constitute a violation of § 196-d, <u>notwithstanding</u> defendants' treatment of the charge for sales or income tax purposes, and the fact that certain patrons believed the charge to be in the nature of a gratuity.

<u>Id.</u> (emphasis added).

This Court is, of course, bound by the New York courts' interpretation of New York's Labor Law.  <u>See Broder v. Cablevision Sys. Corp.</u>, 418 F.3d 187, 200 (2d Cir. 2005). Accordingly, summary judgment dismissing plaintiffs' claim that Jing Fong's retention of a portion of the service fees violates § 196-d must be granted.

<u>Second</u>, as to plaintiffs' claim that Jing Fong illegally used the gratuity pool to pay restaurant expenses in violation of N.Y. Labor Law §196-d, summary judgment must be denied, as plaintiffs produced sworn testimony from two employees with personal knowledge to the effect that half of the salaries of part-time busboys and dim sum servers was taken from the tip pool. <u>See</u> Deposition of Yam Wan Yung dated September 29, 2006 ("Y. Yung Dep.") at ¶¶ 66-67; Affidavit

6

of Yam Wan Yung sworn to September 20, 2006 ("Y. Yung Aff.") ¶ 30.
The use of a restaurant's gratuity pool to pay restaurant expenses is
a "textbook violation of §196-d."  See In re Ngan Gun Rest., Inc.,
183 B.R. 689, 695 (Bankr. S.D.N.Y. 1995).  Although defendants seek
to challenge plaintiffs' evidence of this practice through rebuttal
testimony of other employees, see Second Declaration of Sheng Gang
Deng sworn to November 28, 2006 ("S. Deng Sec. Decl.") ¶¶30-33, the
vehicle for doing so is a trial on the merits, not a motion for
summary judgment.

Third, because this separate violation of § 196-d would
render Jing Fong ineligible to receive a tip credit under New York
law, summary judgment must also be denied with respect to plaintiffs'
claims alleging violations of state overtime and minimum wage laws to
the extent it can also be shown that Jing Fong relied on the tip
credit to satisfy minimum wage laws.  See 12 N.Y. Labor Law § 652(4);
N.Y. Comp. Codes R & Regs. Tit. 12, §137-1.3 (2007).

Fourth, there likewise remains in genuine dispute facts
material to the claim that Jing Fong improperly took a tip credit
under federal law and, in so doing, violated federal overtime and
minimum wage laws.  FLSA § 203(m) prohibits an employer from taking a
tip credit unless: "(1) the employer has informed the tipped employee
of statutory requirements related to the tip credit and (2) 'all tips
received by such employee have been retained by the employee, except
that this subsection shall not be construed to prohibit the pooling
of tips among employees who customarily and regularly receive tips.'"
See Chan, 2006 U.S. Dist. LEXIS 15780, at *8-9 (quoting 29 U.S.C. §

203(m))(emphasis omitted).  These predicates "must be satisfied even if the employee received tips at least equivalent to the minimum wage." See Chu Chung v. New Silver Palace Rest., 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002).  Accordingly, courts have found violations of 203(m) and therefore of federal minimum wage laws even where the employees were, in fact, paid the minimum wage once their tips were taken into account.  Id.

While there are reasons to doubt plaintiffs' claim that Jing Fong's dish transportation workers and pantry workers were not eligible to share in the tip pool because they are not "employees who customarily and regularly receive tips," and even greater reasons to be skeptical of the claim that Jing Fong did not satisfactorily inform employees, many of whom were parties to the earlier action, of the tip credit, the Court cannot rule out such claims on the present record.  For example, an issue of fact remains to be tried regarding whether the pantry workers and dim sum servers, while "not the primary customer contact . . . have more than de minimis interaction with the customers" and are otherwise entitled to share in the tip pool, or, in the alternative, whether they are "like dishwashers, cooks, or off-hour employees like an overnight janitor [who] do not directly relate with customers at all" and who may not share in the pool.  See Kilgore v. Outback Steakhouse, 160 F.3d 294, 301 (6th Cir. 1998).

Fifth, there remains an issue to be tried regarding whether Jing Fong violated the FLSA by paying the wages of part-time workers out of the tip pool.  See New Silver Palace, 246 F. Supp. 2d at 230

("Congress, in crafting the tip credit provision . . . of the FLSA did not create a middle ground allowing an employer both to take the tip credit and share employees' tips.").[5]

Sixth, material issues of fact remain in dispute on the question of whether management improperly exerted influence over the distribution of the tip pool, in violation of federal law. See 29 C.F.R. § 531.54 (2007) (defining a permissible "pooling arrangement" as one where "the employer redistributes the tips to the employees upon some basis to which they have mutually agreed among themselves . . . ."). Here, plaintiffs offered evidence that through influence over the "Black Jackets," Jing Fong was able to improperly increase or decrease certain employees' tip shares. See Affidavit of Kwok Tuen Cheung sworn to November 20, 2006 ("Cheung Aff.") ¶¶ 39-40. Although defendants offer testimony from members of the Black Jackets denying this practice, see Declaration of Sheng Gang Deng sworn to October 30, 2006 ("S. Deng Decl.") ¶¶ 39, 41; Deposition of Di Jun Chen dated August 25, 2006 ("D. Chen Dep.") at 190-191; Deposition of Kwok Tuen Cheung dated August 31, 2006 ("Cheung Dep.") at 276, once again, such disputed facts may only be resolved by trial.

Seventh, summary judgment must be granted dismissing plaintiffs' claim respecting uniforms. Under New York law, an employer is responsible for the cost of purchasing and maintaining a required uniform. See N.Y. Comp. Codes R & Regs. Tit. 12, § 137-1.8.

---

[5] As to all claims under the FLSA here asserted, the Court finds that the question of whether Jing Fong's conduct was willful cannot be resolved as a matter of law on this record, thus leaving open at least the possibility of a three-year limitations period under the FLSA. See 29 U.S.C. § 216.

Plaintiffs assert that while management has a stated policy of reimbursing for cleaning costs, that policy is frequently not followed.  <u>See</u> C. Cheng Dep. at 126-27; Y. Lam. Dep. at 140-44. There is also testimony to the effect that reimbursements are limited to $10 per month, regardless of the actual costs involved.  <u>See</u> D. Chen Aff. ¶ 17; S. Chen. Aff. ¶¶ 16-27.

This claim fails as a matter of law, however, for two reasons.  To begin with, plaintiffs offered no proof that its employees' cleaning costs reduced their wages to below minimum wage. <u>See</u> <u>Chan</u>, 2006 U.S. Dist. LEXIS 15780, at *78 n.39 ("The law's plain language provides that employers who fail to maintain and launder employees' uniforms need only pay an additional amount above the 'minimum' wage to cover uniform-related costs.").  Furthermore, a "required uniform" refers to any "clothing worn by an employee, at the request of an employer, while performing job-related duties" unless such "clothing . . . may be worn as part of an employee's ordinary wardrobe."  <u>See</u> N.Y. Comp. Codes R. & Regs. tit. 12, § 137-3.13.  Here, the items at issue, as plaintiffs describe them, consist of "white button-down shirts, black dress pants, black socks, and black leather shoes," and therefore do not qualify as a "uniform."  <u>See</u> Pl. Mem. at 26.

<u>Eighth</u>, summary judgment must also be granted dismissing plaintiffs' two retaliation claims asserted under N.Y. Labor Law § 215, which provides, in pertinent part, that "no employer . .  shall discharge, penalize, or in any other manner discriminate against any employee because such employee has made a complaint to his employer

10

. . . that the employer has violated any provision of this chapter [the Labor Law]." To satisfy this claim, the evidence must show, at a minimum, that the actions here complained of "constitute an adverse employment action taken because of [the] complaints under the Labor Law." See Kreinik v. Showbran Photo, Inc., 2003 WL 22339268, at *8 (S.D.N.Y. 2003); see also Jacques v. DiMarzio, Inc., 200 F.Supp.2d 151 (E.D.N.Y. 2002).[6]

One of the plaintiffs, Zhou Hua Li, claims that he was demoted from the position of waiter to the position of dish transportation worker after having questioned the restaurant's tip allocation policy during a meeting. See Affidavit of Wai Hung Lam sworn to November 17, 2006 ("W. Lam Aff.") 49; Deposition of Zhou Hua Li dated September 12, 2006 ("Z. Li Dep.") at 70-71. Li's remark about the restaurant policy was, on plaintiff's own showing, nothing more than an assent to another employee's critical comment. See W. Lam Dep. at 49. More importantly, plaintiffs have offered no evidence that management knew of Li's sentiments, but only testimony that a member of the management team "should have been able to hear it." Id. By contrast, Jing Fong has provided unchallenged evidence that Li's reassignment was instead the result of customer complaints regarding his work and attitude. See M. Chan First Decl. ¶¶ 26-28. As a result, the Court concludes Li's change in role does not qualify

---

[6]Although the majority of successful retaliation claims under N.Y. Labor Law §215 are premised on employment termination, this is not the only action that may constitute an "adverse employment action." See Kreinik, 2003 WL 223339268, at *9. There is however little precedent for claims involving an action less adverse than termination

as an adverse employment action and that, in any case, his comments were not the cause of his being reassigned.  Cf. Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002) (emphasizing "the need for plaintiffs to demonstrate a certain severity of harm so that minor incidents or changes in working conditions would not form the basis for a . . . claim.").

The plaintiffs have also claimed that plaintiff Di Chen was retaliated against when, shortly after the initiation of this lawsuit, he was assigned on two consecutive night to wait tables in the "Sandy Hook" area of the restaurant, which he claims is the most onerous part of the restaurant.  See Ex. 33 at JFW 01593 and at JFW 01595, attached to the Fourth Declaration of Caryn Lederer; see also Affidavit of Shao Qing Chen, sworn to November 15, 2006 ("S. Chen Aff.") ¶ 18.  The defendants deny the assertion that the Sandy Hook area is the most difficult part of the restaurant in which to wait tables.  See S. Deng Decl. ¶¶ 73-74, 76. In any case, a two-night assignment that is part of a rotating work schedule is too trivial to qualify as an adverse employment action under § 215.

For the foregoing reasons, the Order dated July 27, 2007 granted defendants' summary judgment motion to the extent that it sought dismissal of (a) the retaliation claims, (b) the claim regarding uniform cleaning costs, (c) the contract claim, and (d) the claim under ¶ 196-d to the extent it is premised on the theory that Jing Fong's retention of the banquet service charge is unlawful; but otherwise denied the motion.

The plaintiffs have also claimed that plaintiff Di Chen was
retaliated against when, shortly after the initiation of this
lawsuit, he was assigned on two consecutive night to wait tables in
the "Sandy Hook" area of the restaurant, which he claims is the most
onerous part of the restaurant.  See Ex. 33 at JFW 01593 and at JFW
01595, attached to the Fourth Declaration of Caryn Lederer; see also
Affidavit of Shao Qing Chen, sworn to November 15, 2006 ("S. Chen
Aff.") ¶ 18.  The defendants deny the assertion that the Sandy Hook
area is the most difficult part of the restaurant in which to wait
tables.  See S. Deng Decl. ¶¶ 73-74, 76. In any case, a two-night
assignment that is part of a rotating work schedule is too trivial to
qualify as an adverse employment action under § 215.

    For the foregoing reasons, the Order dated July 27, 2007
granted defendants' summary judgment motion to the extent that it
sought dismissal of (a) the retaliation claims, (b) the claim
regarding uniform cleaning costs, (c) the contract claim, and (d) the
claim under ¶ 196-d to the extent it is premised on the theory that
Jing Fong's retention of the banquet service charge is unlawful; but
otherwise denied the motion.

                                   _____
                                   JED S. RAKOFF, U.S.D.J.

Dated:  New York, New York
        August 31, 2007

13